Whitaker, Judge,
delivered the opinion of the court:
Plaintiff sues the defendant for the sum of $50,814.68 which it alleges was the amount required to restore its hotel building *337 to the condition it was in when defendant leased it for a barracks for a term beginning July 3,1942.
On that date defendant entered into occupancy of the Vinoy Park Hotel in St. Petersburg, Florida, under an option to lease, which contained the following provision in paragraph 3:
Lessor agrees that occupancy by the Government of the above mentioned premises (including furniture, rugs and other equipment) as a housing facility, will be consistent with that of normal hotel usage and will waive all claims for damage excepting such damage attributable to negligence and exceeding fair wear and tear.
The lease was executed on July 29, 1942. Paragraph 6e thereof reads as follows:
c. It is understood and agreed that carpets and rugs, if any, contained in the hotel are to be considered similarly to furniture insofar as ordinary wear and tear is concerned and that the Government will not restore carpets and rugs except when damage thereto is greater than ordinary wear and tear. That the use which the Army makes of the carpets by using the hotel as a barracks is ordinary wear and tear as understood herein and comparable with civilian hotel usage.
Paragraph 8 of the lease reads in part as follows:
* * * and the Government, if required by the Lessor, shall, before the expiration of this lease or renewal thereof, restore the premises to the same condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted * * *.
The Commissioner has carefully reviewed each item of plaintiff’s claim; he has disallowed some and allowed others. The total amount of the items allowed by him is $7,932.22. Plaintiff has filed a short typewritten memorandum accepting the amount allowed.
Defendant contests the amount allowed on the ground that some of it was spent to repair ordinary wear and tear, and, second, because, it says, plaintiff has not proved its alleged damage. Finally, defendant claims an offset for work done in restoring parts of the property to a condition better than it was in when the defendant leased it.
*338 We have carefully reviewed the Commissioner’s findings and defendant’s exceptions thereto, and conclude that the findings are amply supported by the evidence, with only one minor exception:
On August 31, 1944, the defendant had finished all the work which it thought it was required to do to restore the premises to the condition it was in when the defendant took over occupancy of it, and on that date it offered to turn over possession to plaintiff. This offer was refused and plaintiff did not resume possession until November 11,1944, on which date defendant notified it that it was again tendering possession and was removing its security guard over the premises. When defendant offered to return possession to plaintiff on August 31,1944, it had thoroughly cleaned the premises. Between this date and November 11, 1944, when plaintiff resumed occupancy, plaintiff’s representatives and employees were in the building installing carpets in the corridors and rooms. The Commissioner finds that the necessity for further cleaning of the building on November 11, 1944, was partly due to the activities of plaintiff’s employees. We are of the opinion that it was almost wholly due to their activities, and not due to any act of the defendant; after August 31,1944, defendant had no workmen in the premises nor any other employees, except a security guard. Any further work that was necessary to clean the building we think was due to the activities of plaintiff’s employees. We do not think plaintiff is entitled to recover the sum of $571.12 which it spent in further cleaning the property.
Defendant spent $133,547.19 in restoring the building. Defendant says that a large part of this amount was spent in offsetting wear and tear to which the building had been subjected in the fifteen years before defendant’s occupancy. Where the building was damaged by defendant’s occupancy and it undertook to repair the damage, it of necessity not only repaired the damage but to some extent offset previous wear and tear; for instance, the walls might have needed painting to a certain extent when defendant took over the building, but were soiled further or otherwise damaged during defendant’s occupancy; obviously defendant could not repair the damage without at the same time offsetting previ *339 ous wear and tear. Defendant is clearly not entitled to offset this advantage which plaintiff received as an incident to the discharge of an obligation placed on the defendant by the lease to restore the building to the condition it was in when it took over occupancy. The offset claimed consists altogether of such items.
We are of opinion that the plaintiff is entitled to recover $7,361.10. Judgment for this amount will be entered against the defendant.
Howell, Judge; MaddeN, Judge; Littletokt, Judge; and Jones, Chief Judge, concur.
EINDINGS OE EAOT
The Court makes findings of fact, based upon the evidence, the report of Commissioner Currell Vance, and the briefs and argument of counsel, as follows:
1. The plaintiff is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in St. Petersburg, Florida. It is and was at all times pertinent to this case the owner and operator of a hotel in St. Petersburg, Florida, known as “Vinoy Park Hotel.”
2. On June 27,1942, pursuant to negotiations between the parties, the plaintiff gave to the defendant a written option to lease the said Vinoy Park Hotel property for a term starting with occupancy and ending June 30,1943, for the sum of $92,250. S aid option is in evidence as plaintiff’s Exhibit A-l, and, among other provisions, contains the following:
1. The rental for the described property shall be $92,250.00 per annum for the period (see par. 8) 1942 to June 30,1943, plus an additional sum in payment of the following articles, equipment, and contents of the said hotel, viz, sheets, pillowcases, shower curtains, pots and pans — price to be determined when inventory is made — such articles named becoming the property of the Government. Such additional sum shall be determined by negotiation between the parties and inserted in the lease when drawn. The annual rental after June 30, 1943 shall be $92,250.00. 1 (a). This option expires midnight July 11, 1942.
*340 2. Lessor agrees to furnish, as part of the rental consideration, basic furniture now in the hotel such as beds, springs, mattresses, pillows, dressers, tables, chairs, blankets, kitchen equipment including chinaware, silverware, glassware, but excluding drapes, bed spreads, mirrors, pictures, bric-a-brac, antiques and lobby rugs. The Commanding Officer of the using arm will determine what furnishings shall remain as part of the leased premises.
3. Lessor agrees that occupany by the Government of the above mentioned premises (including furniture, rugs and other equipment) as a housing facility, will be consistent with that of normal hotel usage and will waive all claims for damage excepting such damage attributable to negligence and exceeding fair wear and tear.
4. Lessor will maintain and keep in good condition, the exterior and roofs of all structures in and upon the premises included in this option and further warrantees that the mechanical equipment upon said premises, including plumbing, is in good repair.
3. On the same day plaintiff gave to the defendant written permission to occupy the premises on June 29, 1942. This permission is in evidence as plaintiff’s Exhibit A-2.
4. On July 1, 1942, the defendant notified the plaintiff by telegram that it accepted the plaintiff’s option to lease the hotel property. Defendant further notified the plaintiff in writing that it desired to assume complete possession of the hotel as of 8 a. m., July 3,1942. The defendant accordingly entered into such occupancy on July 3, 1942, prior to the execution of the formal lease by the parties.
5. On July 29,1942, the plaintiff and the defendant, acting through the War Department, entered into a written lease of the hotel property for a term from July 3, 1942, to June 30, 1943, with the right in the defendant to renew the lease from year to year upon 30 days’ written notice to the plaintiff, provided that no renewal of the lease should extend the period of occupancy beyond six months after the termination of the emergency. Said lease is in evidence and contained, among others, the following provisions:
2. The Lessor hereby leases to the Government the following described premises, viz: Lots J, K, L, M, and N, of Bay Shore Subdivision, City of St. Petersburg, Pinellas County, Florida, as shown by plat recorded in *341 Plat Book 3, page 41, and also all of the lands filled in by the Yinoy Park Hotel Company, as shown by plat recorded in Plat Book 10, page 35, Public Records of Pinellas County, Florida, together with all buildings and improvements thereon erected and all fixtures, furnishings and equipment therein contained; being known as the “Vinoy Park Hotel,” Beach Drive, St. Petersburg, Florida.
*****
6. The Lessor shall furnish to the Government, during the occupancy of said premises, under the terms of this lease, as part of the rental consideration, the following:
a. Basic furniture now in the hotel including beds, springs, mattresses, pillows, dressers, tables, chairs,_ but excluding drapes, bed spreads, mirrors, pictures, bric-a-brac, antiques, and lobby rugs.
5. Lessor agrees to sell to the Government kitchen utensils (pots and pans), sheets, pillow cases, such articles becoming the property of the Government and upon purchase price therefor being paid such items shall be deducted and withdrawn from the inventory of the contents of the hotel. The items so purchased áre shown on schedule attached to Owners’ Warranty, which warranty and schedule are attached hereto and made a part hereof.
o. It is understood and agreed that carpets and rugs, if any, contained in the hotel are to be considered similarly to furniture insofar as ordinary wear and tear is concerned and that the Government will not restore carpets and rugs except when damage thereto is greater than ordinary wear and tear. That the use which the Army makes of the carpets by using the hotel as a barracks is ordinary wear and tear as understood herein and comparable with civilian hotel usage.
d. Lessor warrants that the mechanical equipment upon said premises, including plumbing is in good repair.
ij» »í»
8. The Government shall have the right, during the existence of this lease, to make alterations, attach fixtures, and erect additions, structures, or signs, in or upon the premises hereby leased (provided such alterations, additions, structures, or signs shall not be detrimental to or inconsistent with the rights granted to other tenants on the property or in the building in which said premises are located); which fixtures, additions, or structures so placed in or upon or attached to the said premises shall be and remain the property of the Government and may be removed therefrom by the Government prior to the *342 termination, of this lease, and the Government, if required by the Lessor, shall, before the expiration of this lease or renewal thereof, restore the premises to the same condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted : Provided, however, That if the Lessor requires such restoration, the Lessor shall give written notice thereof to the Government twenty (20) days before the termination of the lease.
9. The Lessor shall, unless herein specified to the contrary, maintain the roof and exterior of said premises in good repair and tenantable condition during the continuance of this lease, except in case of damage arising from the act or the negligence of the Government’s agents or employees. For the purpose of so maintaining the premises, the Lessor reserves the right at reasonable times to enter and inspect the premises and to make any necessary repairs thereto.
í» í¡>
14. Immediately after the consummation of this lease representatives of the Lessor and the Government shall make a joint survey and inventory setting forth the furnishings and equipment generally described in para. 6 hereof.
6. On May 18, 1943, the defendant gave written notice to the plaintiff that it was renewing the lease for one year from July 1,1943, to June 30,1944. The plaintiff acknowledged this notice of renewal in writing, under oath, on May 22, 1943.
On June 19, 1943, the defendant gave the plaintiff notice of cancellation of the lease. Subsequently such cancellation was set aside by mutual agreement and on August 1, 1943, plaintiff and defendant entered into a written agreement amending the original lease to recite occupancy by the War Shipping Administration. Said agreement is in'evidence as plaintiff’s Exhibit B. Said agreement recited the assumption by the War Shipping Administration of the obligation to restore the premises at the termination of occupancy in accordance with the provisions of paragraph 8 of the original lease. It provided further that the War Shipping Administration agreed to allow the lessor to continue storage of un *343 used furniture and equipment in the rooms in which they were then stored, but that if any of said storage places should be broken into and the furniture and equipment maliciously broken, destroyed, or removed, the War Shipping Administration would restore said furniture and equipment to original condition.
7. Following the occupation of the premises by the defendant on July 3, 1942, the parties made a joint inventory of the furniture and equipment considered to be covered by the lease, as provided in paragraph 14 of said lease hereinabove quoted. Said inventory is in evidence as plaintiff’s exhibit A-7, and includes certain articles of personal property later purchased by the defendant from the plaintiff and deleted from the inventory.
8. Following the execution of the lease by the parties, the defendant conducted a detailed survey of the premises, including the grounds, buildings, furniture and equipment, entitled “Statement of Condition.” Said survey is very detailed and was submitted to the plaintiff for comment. Plaintiff appended to said survey certain written exceptions, and with these reservations accepted the statement of condition. Said statement of condition, with plaintiff’s written exceptions, is in evidence as defendant’s Exhibit 1.
Yinoy Park Hotel was built in 1925 and had been in operation for over fifteen years before it was leased to the defendant. The statement of condition, though extremely detailed, in general shows the wear and tear from normal usage which a hotel would naturally undergo over a period of years.
9. On February 26, 1944, the defendant gave the plaintiff written notice that it was cancelling the lease as of April 1, 1944, under the provisions of paragraph 12 thereof.
On March 3,1944, the plaintiff gave the defendant written notice in accordance with paragraph 8 of the lease, that it would require the defendant to restore the premises to the conditions recited therein.
10. The defendant suggested to the plaintiff that, inasmuch as it (the defendant) was not equipped to perform the work of restoration, the plaintiff obtain an estimate of the cost to the end that the parties might reach a cash settlement in discharge of defendant’s obligation.
*344 The plaintiff by letter advised the defendant that its contractor had made an inspection and had estimated that restoration would cost $138,000, but that as a compromise and in an effort to reach a settlement, plaintiff would accept the sum of $111,000, plus 5 months’ rent to cover the period of restoration. The defendant made a counter-offer of $85,000 plus 3y2 months’ rent, which counter-offer was not accepted.
The defendant thereupon undertook to perform the work of restoration itself. It has expended in such effort the sum of $133,547.19. It has paid rent until November 11,1944, and left the premises on that date with restoration incomplete.
11. Vinoy Park Hotel is a luxury resort hotel. It operates for a short season from the latter part of December to the early part of April, “and caters to a clientele able to afford luxury service.”
The lease entered into between the Hotel Company and the defendant contemplates occupation by troops. Paragraph 6c specifically states that the carpets and rugs, if any, contained in the hotel are to be considered similar to furniture insofar as ordinary wear and tear is concerned, and that the Government will not restore carpets and rugs, except when damage thereto is greater than ordinary wear and tear, and that the use which the Army makes of the carpets by using the hotel as a barracks is ordinary wear and tear as understood in said lease.
12. Plaintiff’s claims are listed in Exhibit C to the petition. They will be discussed serially, under the numbered paragraphs of said exhibit.
SECTION' A
(1) With the permission of the commanding officer of the defendant in occupation under the lease, the plaintiff was allowed to remove all of the carpets from the rooms and corridors of the hotel. Certain enlisted personnel were loaned to the plaintiff to assist in this work under the supervision of an employee of the plaintiff. Plaintiff had the carpets stored, and has paid the cost of storage, insurance, and the cost of relaying the carpets. It claims that the defendant is liable for these costs.
*345 Under the preponderance of the proof, the removal of the carpets was for plaintiff’s advantage, and there was no agreement on the part of the defendant to pay any part of the expenses.
(2) This item covers broken stone work around the exterior of the building, and heel marks on the porch and walls of the porch caused by the composition of the heels of the shoes of the enlisted personnel.
Damage on this item is $1,324.69.
(3) The defendant undertook to return the premises to the plaintiff on August 31,1944, with restoration incomplete, but plaintiff declined to accept possession, and did not accept such possession until November 11, when defendant notified the plaintiff it was removing its security guard. Plaintiff later filed claim with the Comptroller General for damage and cost of restoration and for rent on the premises up to November 11. The Comptroller General allowed rent for such period, but denied cost of restoration and damages. The hotel’s expense for maintenance of the hotel grounds from September 1,1944 to November 11,1944, was $1,284.11.
(4) The Government undertook to repaint the lobby of the hotel but in doing so did not complete the lobby ceiling, elevator cabs, entrances and wells, some woodwork in the lobby and on the mezzanine floor, and some furniture. The defendant did paint the walls of the lobby up to the point where the vaulted arches began. It resulted that there was an unpleasant contrast between the walls and the ceiling lobby. Occupancy by the defendant did no damage to the ceiling beyond ordinary wear and tear. In performing the painting which defendant did perform, it restored the painted surfaces to a condition better than its obligation under the lease.
The plaintiff’s cost on this item was $1,944.12, but neither plaintiff’s claim nor its books afford any breakdown of the cost of the separate items. The proof is insufficient to establish plaintiff’s costs for work performed on this item, omitting cost of painting of the lobby ceiling.
(5) This item is a claim for $2,109.50 for work done by the plaintiff and supplies purchased for the hotel kitchen after the defendant left the premises. The defendant did *346 undertake to restore the kitchen, and completed the work of restoration it felt responsible for. Under the proof certain equipment was missing, and some of the plumbing had been done incorrectly and had to be corrected by the plaintiff. However, under the preponderance of the proof, the plaintiff expended a considerable sum in improvements on the kitchen not involved in its restoration to its condition prior to the lease.
At the beginning of the lease a list of kitchen equipment was sold to the Government, and at the termination of the lease such equipment was repurchased by the hotel. There is included in the claim under this item a sum spent in having some of this equipment retinned.
It is impossible to segregate from this claim any sum for which the defendant is liable other than the value of certain missing articles totaling $11.17.
(6) This is a claim for sundry articles claimed to have been turned over to the defendant with the premises at the beginning of the lease, and missing upon termination of the lease, and also for failure of the defendant to perform certain repair work and to restore the furniture to its proper location or to properly clean the premises. As shown, a considerable variety of items go to comprise the total claim of $3,756.18.
As stated hereinabove, pursuant to the provisions of the lease, there was made an inventory of hotel properties turned over. The articles claimed missing under this item (6) were not in such inventory.
The proof is insufficient to establish the defendant’s other failures under this claim, or the amount of plaintiff’s damage resulting from such failure.
(7) As stated hereinabove, the defendant was required by the Comptroller General to continue paying rent to November 11, 1944. Defendant had endeavored to return the hotel to the plaintiff on August 31,1944, but plaintiff had refused to accept delivery because restoration was incomplete. During the period from August 31 to November 11, plaintiff incurred and paid charges for electricity and water, and for the rein-stallation of'telephones in the hotel, in the sum of $884.33.
*347 (8) During the continued occupancy of the premises by the defendant after August 31, 1944, representatives of the plaintiff were in the building installing the carpets in the corridors and rooms. Due to their activities the premises, when finally delivered to the plaintiff on November 11, were not thoroughly cleaned. Defendant had undertaken to clean up in anticipation of a delivery of the property on August 31, 1944. Plaintiff expended in cleaning up the property, after November 11, $571.12.
(9) Part of the hotel property consists of a large open area of filled-in land to the east of the hotel building, as shown in the photographs in evidence in the case. This area was used by the defendant as a drill ground, and as part of the activities pits were dug. In such use the defendant destroyed 319 feet of tile walk leading from the hotel to these grounds, which plaintiff had to replace at a cost of $391.50.
(10) During occupancy of the hotel, the defendant discovered an area in the ballroom, the floor of which had been weakened by termites, and repaired this condition. Before returning the property to the plaintiff, the defendant had the ballroom floor sanded and waxed. Plaintiff claims that this work was inefficiently done, and that a portion had to be done over by it, at a cost of $194.40. This work, however, was done over by plaintiff in October 1946, after two seasons of occupancy by plaintiff, after the termination of defendant’s lease. It does not sufficiently appear that any condition existing at such time was not attributable to plaintiff’s use of the property.
SECTION B
13. Under this section plaintiff makes a number of claims for work and equipment which it says the defendant failed to restore, and which have not yet been restored by the plaintiff. It gives estimates of the cost of such work, equipment, and materials.
(1) As stated above, defendant’s occupancy of the hotel began in July 1942. Since the hotel had not been in operation from early in April of 1942, neither the building nor the grounds had been groomed as customarily done during operation. Consequently, comparative photographs exhibited in *348 evidence by tbe defendant showing the grounds at about the time the lease began, and in the fall of 1944, showed generally the grounds and shrubbery as appearing better groomed at the latter date.
Plaintiff claims that 800 plants of the Turks Cap hedge at a cost of $3.50 each were ruined and required replacing. The comparative photographs referred to do not bear out this contention.
By use of the east grounds as a drill ground, the defendant destroyed an additional 500 feet of tile walk, the cost of replacing which is $615.
Plaintiff further claims a prospective cost of $500 for replacing miscellaneous shrubbery. The comparative photographs mentioned above do not substantiate this claim. Nor do they substantiate plaintiff’s claim of $350 for the rock garden, and $175 for the hothouse.
Plaintiff, prior to defendant’s lease, had installed an underground watering system in the east grounds of the hotel. This consisted of longitudinal pipes running east and west with laterals at intervals extending to hose and sprinkler connections. The use of this area as a drill ground substantially destroyed this watering system, which it will cost plaintiff $400 to replace.
Also, on such grounds plaintiff had constructed a pergola, which the defendant dismantled. The cost of replacing this pergola is estimated at $275.
Plaintiff had in use, prior to the defendant’s occupancy of the premises, several solaria, as shown in photograph, plaintiff’s Exhibit C-B-l-a. One of these was missing upon the return of the property to plaintiff, and the cost of replacing it is $175.
(2) Plaintiff claims that the occupancy of the defendant damaged the concrete floors, that defendant failed to repair them adequately, and that the cost of such repair would be $3,174. Between the structural concrete floors of the hotel rooms and corridors and the overlying carpets there had been installed a layer of soft concrete. After the removal of the carpets, the use of such floors by the military personnel largely wore away this soft concrete. This damage the de *349 fendant repaired before returning the property, using for such purpose a product suggested by the plaintiff called “Permaflex”. Plaintiff’s claim on this item is not substantiated.
(3) Plaintiff asked for the sum of $4,400, which it says represents excessive wear and tear by trainees, during two years of Government occupancy, on the tile floor of the lobby of the hotel. Inasmuch as the lease contemplated occupation by such trainees, the wear and tear caused by them on such floors was ordinary wear and tear for which the defendant is not to be charged.
(4) Plaintiff claims that the portion of the ballroom floor which it has not already had refinished, will require refinishing, due to defendant’s occupancy, at a cost of $363.60. As stated in finding 12 (10), this building has been occupied for two seasons by plaintiff since the termination of defendant’s lease, and it does not appear whether this condition existed at the time defendant returned the property to plaintiff, or whether it was attributable to plaintiff’s subsequent use of the property.
(5) During occupancy, the Government for purposes of fire prevention and military discipline removed all doors from the sleeping rooms of the hotel and stored them. These doors were stored, either upright or lying flat with hardware still attached. It is plaintiff’s claim that the method of storage caused the doors to become warped, and it asks to recover 50 percent of the cost of 311 new doors, in the sum of $4,354. As stated above, plaintiff employed a contractor to estimate the cost of restoration after Government occupancy. Included in such estimate is $1,000 for restoration of such doors. Plaintiff is entitled on this item to recover this amount.
(6) At the end of its occupancy the defendant had had completely cleaned and renovated all mattresses and springs. The bulk of such mattresses and springs did not suffer wear and tear in excess of that contemplated by Government occupancy.
As a part of the renovation of springs and mattresses the defendant had all of them recovered. They had originally *350 been covered with 8-ounce ticking, but it was found that the heaviest ticking available was 6.2-ounce. It was felt that ticking this light would allow the hairs of the springs and mattresses to stick through, and a felt mat was installed under the ticking to prevent this from occurring. The mattresses and springs were returned by the defendant to the plaintiff in at least as good condition as at the beginning of the lease.
(7) At the end of the occupancy the defendant undertook to repair 406 screens damaged during occupancy. As copper screening, which had previously been installed, was not at that time available, the defendant used galvanized wire screen. The difference in cost was six cents per square foot. The 406 screens required 3,890 square feet, which at 6 cents per square foot amounts to $233.40.
(8) Upon restoration of possession to the plaintiff it was found that certain door checks were missing, valued at $317, which plaintiff is entitled to recover.
(9) Plaintiff claims the right to recover $81 for missing storm shutters upon return of the property to it. Said storm shutters were not listed in the inventory, and were consequently not the defendant’s responsibility.
(10) Nor were the 5,000 clothes hangers listed in the inventory, and for this reason plaintiff is not entitled to recover the amount claimed for them.
(11) Upon return of the property to the plaintiff certain furniture of a value of $449.90 was missing. Defendant claims that the deficiency was canceled by delivery to the hotel of certain other furniture which had never belonged to plaintiff. The proof is insufficient to show such settlement of this claim.
14. It is therefore found that plaintiff is entitled to recover the following amounts under the items of Exhibit C to the petition:
Section A
$1,324.69 tí
1,284.11 05
11.17 CT
884.33
391.60 CD
$3,895. 80
*351 Section B
(I)_$1,466.00
(5)_ 1,000.00
(7)_ 233.40
(8)_ 317.00
(II)_ 449.90
- 3,465.30
Total 7, 361.10
CONCLUSION OR LAW
Upon tbe foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover, and it is therefore adjudged and ordered that it recover of and from the United States seven thousand three hundred sixty-one dollars and ten cents ($7,361.10).